MATTER OF HOEFT

In Deportation Proceedings

A-14127754

*Decided by Board September 27, 1966 and April 14, 1967*

(1) Since the test for determining applicability of the labor certification requirements of section 212(a)(14) of the Immigration and Nationality Act, as amended, is whether the nature of an alien's immigration will necessitate competition in the labor market, respondent, a 32-year-old divorcee desirous of remaining in the United States to rear her 3 children here, who engages in labor—part-time employment doing ironing at home, having previously been employed as a full-time housekeeper—is not exempt from the labor certification requirements for the purpose of qualifying for adjustment of status under section 245 of the Act, as amended.

(2) As the section 245 application for adjustment of status filed prior to December 1, 1965 by respondent, a native of Tonga, was not previously barred from consideration by the provisions of section 245(c) of the Act as amended by the Act of October 3, 1965, it may not now be considered pursuant to the 1966 amendment (section 3, Act of November 2, 1966) to section 245(c), since such amendment is applicable only to the classes mentioned in section 245(c)—native of countries of the Western Hemisphere and of adjacent islands named in section 101(b)(5) of the Act.

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Non-immigrant remained longer.

ON BEHALF OF RESPONDENT:
Donald L. Ungar, Esquire
220 Bush Street
San Francisco California 94104

ON BEHALF OF SERVICE:
Donald B. Anderson
Acting Trial Attorney
(Brief submitted)

BEFORE THE BOARD

The SIO certified his order denying respondent's application for adjustment of status. Voluntary departure was granted. No change will be made in the order.

Respondent, a 32-year-old divorced female, a native and citizen of Tonga, was admitted as a visitor for pleasure on August 6, 1963 and has remained in the United States without authorization since November 1, 1964. Deportability is clearly established.

182

Respondent married in Tonga in 1957 and divorced her husband in 1965. There are three children of the union, the oldest is eight. Two of the children live with her; the third child lives with respondent's father in Tonga. Respondent expects to bring this child to the United States. Respondent was given custody of all three children by the court. The decree provided that the husband was to pay respondent $60 a month for her support and $100 a month for the support of the children. She has never received any assistance from public welfare. The respondent depends mostly upon the money she receives from her husband for her support and the support of her children. She had been working full time as a housekeeper, but learning that such employment would require her to get a labor certification she took part-time work. Two or three days a week, she spends about four hours a day ironing for people who bring their washed clothing to her home. She desires to remain in the United States so she can raise her children in the United States and give them a good education.

Respondent's application for adjustment of status was denied on the ground that she cannot show eligibility for an immigrant visa until she receives a certification under section 212(a) (14) of the Act from the Secretary of Labor that her entry will not be in competition with available labor or that it will not adversely affect workers similarly employed. Counsel contends respondent is exempt from the requirement of a certification because such a requirement applies to one whose *primary* purpose in entering is to perform the labor whereas the respondent's primary purpose is to care for her children. The Service does not take issue with the contention that the primary purpose of entry is controlling but believes that in the instant case that since the respondent admittedly quit a full-time job as a housekeeper and began her part-time employment (ironing at home) to bring herself within the immigration laws, she is actually a person who seeks to enter primarily to engage in full-time gainful employment.

In view of the history of full-time employment as a housekeeper and the fact that respondent is divorced and has family obligations, we believe that it may be found her primary purpose in entering is to take full-time employment. A labor clearance is required.

**ORDER:** It is ordered that no change be made in the order of the special inquiry officer.

### BEFORE THE BOARD

On September 27, 1966, the Board ordered respondent's application for adjustment of status under section 245 of the Act denied. We found that respondent, a 32-year-old divorced female, was a native and citizen of Tonga, that she illegally entered the United States, that she had been employed full time and that she intended to be employed

183

in the future. We concluded that she could not show eligibility for an immigrant visa until she received a labor certification under section 212(a)(14) of the Act from the Secretary of Labor (a statement that her entry would not be in competition with available labor or that it would not adversely affect workers similarly employed).

In the motion for reconsideration, counsel contends that respondent never had full-time employment, that now she works about 12 hours a week doing ironing in her own apartment, that the support of her children (two with her in the United States; one in Tonga) is chiefly the obligation of her former husband who is under court order to support them, and that her primary purpose in seeking to enter the United States is not to perform labor, but to be at home with her children in the United States and to give them a good education. Counsel contends that under these facts respondent is exempt from obtaining a labor certification.

The Service which formerly contended that it was the *primary* purpose of entry which determined whether a certification is needed, in opposing the motion, contends that it is not the alien's primary purpose in entering which is controlling, but whether "it is the purpose of the alien to perform any labor in the United States, whether full or part time, primary or incidental, which may impinge, however remotely, on workers already in the United States * * *." The Service contends since respondent is engaged in some labor, she must produce a labor certification. (The Service asks that we delete the words "primary" or "primarily" where they appear in our decision of September 27, 1966.)

Certain dependents and others listed in 8 CFR 212.8 (February 1, 1967) do not require a labor certification. Our discussion should be read with this in mind. The statute itself does not condition the obtaining of a labor certification upon a finding that an alien is entering *primarily* for the purpose of performing labor. The statute makes the certification requirement applicable to "Aliens seeking to enter the United States, for the purpose of performing skilled or unskilled labor, * * *." The test making the certification provisions dependent upon a finding that the immigrant's *primary* purpose is to engage in employment was based upon a misreading of language in Congressional reports:

* * * The primary responsibility is placed upon the intending immigrant to obtain the Secretary of Labor's clearance prior to the issuance of a visa * * *. The provision is applicable to immigrants from the Western Hemisphere, other than immediate relatives, nonpreference immigrants, and those preference immigrants who seek entrance into the United States for the *primary* purpose of gainful employment, whether in a semiskilled or skilled category or as a member of the professions, arts, or sciences. * * *. (Emphasis supplied.) S. Rep. No.

748, 89th Cong., 1st Sess. 15 (1965) as set forth in 2 U.S. Code Cong. & Adm. News 3333-4 (1965); to similar effect, H.R. Rep. No. 745, 89th Cong., 1st Sess. 14 (1965).

The reference, in the cited report, to an entry for the primary purpose of employment does not attempt to state a test for determining when the three classes of immigrants must obtain a labor certification; it is merely descriptive of one of the three classes. This can be seen from the mere fact that the words do not even refer to two of the three classes of aliens mentioned in the cited report: The words do not apply to the immigrants from the Western Hemisphere,[1] or to the immigrant who has a preference only by reason of relationship. In referring to the third group, the words describe not the purpose of alien workers in entering, but the kind of immigrant who is given a preference primarily because his services are needed (sections 203(a) (3) and (6) of the Act).

The test, drawn from a careful consideration of the statute, the Congressional history, and the regulations, is that the immigrant's purpose in coming, will not immediately require employment. The purpose will not require competition with the American labor market. The nature of migration will not necessitate competition in the labor market. (Where employment, if taken, will only be after a bona fide period of preparation, as in the case of one who has come to the United States to study, a certification will normally not be needed when the alien applies to enter as a student, *Matter of Redekop-Rempening*, Int. Dec. No. 1603.) Respondent is not within the exempted classes. She engages in labor. She is required to obtain a labor certification.

A contention of counsel based on the effect of an amendment to section 245(c) on November 2, 1966 (P.L. 89-732, 80 Stat. 1161) requires some discussion. Originally natives of the Western Hemisphere were eligible to file applications for adjustment of status under section 245; many such applications were filed. The Act of October 2, 1965 (79 Stat. 919) made such aliens ineligible to file applications under section 245. Even applications filed before December 1, 1965 and not acted upon could not be considered (*Matter of George and Lopez-Alvarez*, Int. Dec. No. 1533). The 1966 amendment (although the bar to the filing of applications by Western Hemisphere natives was retained) permitted

---

[1] Representative Celler in speaking of the immigrant from the Western Hemisphere said:

* * * in each instance, in every single instance there must be issued by the Secretary of Labor a certficate to the effect that as to the person coming from the Western Hemisphere, his coming will not have the effect of depressing wages or adversely affecting the conditions of employment (111 Cong. Rec. 21591. August 24, 1965).

185

applications which had been filed before December 1, 1965 to be considered and provided that they were to be adjudicated under the laws in effect before December 1, 1965. This was before the labor certification provisions came into effect. Counsel contends that respondent was meant to be benefited under the 1966 amendment since her application was filed before December 1, 1965 and the Act requires equal treatment of aliens. We find that Congress intended the 1966 amendment to benefit only persons whose applications were on file before December 1, 1965 and could not be previously considered because of the provisions of section 245(c).

The purpose of the 1966 amendment was explained in a conference report as follows:

Section 2 of the Senate amendment provides that any application for adjustment of status under section 245 of the Immigration and Nationality Act filed with the Attorney General prior to December 1, 1965, may be adjudicated notwithstanding the provisions of section 245(c) of the Immigration and Nationality Act. This objective is identical with H.R. 12596, which was approved by the House of Representatives August 1, 1966. The language of the Senate amendment with respect to this provision is slightly different from the House version but accomplishes the same objective. The conferees agreed to adopt the Senate provision. (Conference Report No. 2334 H.R. Bill 15183 as reported in 3 U.S. Code Cong. & Adm. News 89th Cong., 2d Sess., 3802 (1966).)

The bill to which the conferees referred (H.R. 12596) provided for the amendment of section 245 of the Act by adding a new subsection (d) to read as follows:

(d) The provision of paragraph (c) of this section shall not apply to any application for adjustment pending before the Attorney General on December 1, 1965.

We conclude that the 1966 amendment of section 245(c) created an exception for those mentioned in the section (natives of the Western Hemisphere and adjacent islands) who had filed applications for adjustment of status before December 1, 1965. It was not meant for others. We have no authority to extend the exemption to classes of aliens whose applications filed before December 1, 1965 were not barred from consideration by section 245(c). If this constitutes unequal treatment of aliens, the remedy is with Congress.

We shall not modify any particular words in our order of September 27, 1966; the present order disposes of the issues.

ORDER: It is ordered that the motion be and the same is hereby denied.